Step up to the podium and introduce yourselves. Clerk, please call the first case. Good morning, and who represents, who's going to argue for the appellant? Good morning, Your Honor. Nicholas Kern. And for the appellee? Good morning, Janet Mahoney on behalf of the people of the state of Illinois. Ms. Mahoney. Very good. You're both going to have 15 minutes. Appellant, do you want to rebuttal? I'm sure you do. Please reserve from the 15 minutes, whatever time you'd like, for your rebuttal. Thank you very much. You may proceed, Mr. Kern. May it please the Court, Counsel. My name is Nicholas Kern. I'm an attorney with Kathleen T. Zellner & Associates, and I represent the defendant appellant, Mr. William Chaban. Mr. Chaban was convicted following a jury trial of the first-degree murder of his mother-in-law, Irina Opelinska. He was sentenced to 45 years in the Illinois Department of Corrections. This is a direct appeal from that judgment of conviction. We have raised a number of issues in our brief. However, there is one in particular that I'd like to focus on here today, and that is the improper admission of opinion testimony during the testimony of Dorota Opelinska. And to provide a little bit of context as to how this testimony came into evidence, Dorota is the victim's daughter and the defendant's wife. Dorota and the defendant contacted the police after finding the victim's body in her apartment on June 18, 2007. Prior to the defendant's trial, Dorota was charged and convicted with obstruction of justice and perjury. The basis for those charges was that she had lied about her and the defendant's presence in the victim's residence on June 15, 2007, which was the date that the prosecution theorized that the murder took place. Now, the prosecutor called Dorota to testify in its case in chief. Well, if I can go back a little bit. So she testifies, the wife testifies at the grand jury in 07. She testifies at some kind of a proceeding on August 23, 2010, which is part of what you're complaining about. What was going on on August 23? That's an excellent question. When I drafted the brief, I thought that that was perhaps the defendant had been re-indicted and it was a subsequent grand jury proceeding. After having had a chance to review the record in preparation for today, I don't think that that's accurate. I think that I don't. It's before a judge. Right. Certainly. And I hate to speculate, but my best guess is that that was her perjury and obstruction of justice trial, but I don't know that to be sure. Hopefully the state will be able to explain it, so while he's arguing, look that up if you would, Ms. Mahoney. Please go ahead. Thank you, Your Honor. I do know that Dorota was testifying under a grant of immunity at these proceedings. At trial, she denied any knowledge of the murder. She testified that the last time she saw the victim was on June 13, 2007, and that she and the defendant went to pack some of her belongings at the victim's residence on June 15, and that they did not see the victim prior to them both leaving her condo. Now, during the course of her testimony, the prosecutor repeatedly elicited testimony regarding her beliefs in the defendant's guilt. And I want to read just a very quick excerpt so the court has an idea of what kind of testimony I'm referring to. So the question was posed, back in June of 2007, you believed your husband murdered your mother, correct? Answer, in 2007, yes, I believed. What page was that?  And the questioning goes on, and you believed he killed her in cold blood in her home, correct? And Dorota asks, if I may ask, is it right now that you are asking? Question, do you believe that? Answer, that he killed her you are asking me? Question, yes. Answer, no, I don't believe that he did it. The prosecutor then proceeded to impeach her, even though she had admitted that in June of 2007 she held this belief. The prosecutor proceeded to impeach her with her testimony given at this prior proceeding, where she was asked, you still believe that the man you were married to killed your mother in cold blood in her own home, correct? The objection was made, and that was denied. Correct. Proceed. Thank you, Your Honor. And so that kind of gives the court an idea of the kinds of questions and answers that make up this issue. And this was not the only. Dorota denied on at least three occasions during the direct by the State that she currently believed that her husband had killed her mother. That's correct, Your Honor. And from there the prosecution proceeded to impeach her with testimony given at this prior proceeding regarding her past belief, I suppose. Actually, it sounds like they started with past belief and then went to, got her denials after that. Correct. I think that's a fair characterization. This isn't really opinion testimony, is it? Isn't it merely an indication of the statements that she made in 2007? Well, the statements go.  Correct. She never testified at trial that now she believes the defendant killed Irina. Right. The form of this was the prosecutor initially asked, did you believe in 2007 he killed her mother? And she said yes. And then the prosecutor rephrased the question somewhat by saying, you believe that he killed her in cold blood in her own home, to which she equivocated, I guess would be a fair characterization of her response. And then the prosecutor proceeded to impeach her with testimony given at that prior proceeding regarding her beliefs as to his culpability. Okay. I'm not familiar with that case offhand, Your Honor, and I don't know if that was cited in the State's brief. What I can tell, Your Honor, is that this kind of testimony was held to be improper and highly prejudicial in the case of People v. Crump, which was a case that this Court decided in 2001, and it's a case that we cite in our brief. In Crump, you had an investigating detective testify that during the course of his investigation, he believed, he had cause to believe, that the defendant committed the offense. This Court noted that a lay witness may not express an opinion or draw inferences from the facts. Rather, a lay witness is confined to testifying to facts of which he or she has personal knowledge. This Court held that in that situation because of the fact that it was a police officer's testimony. That's correct, Your Honor. Okay. And the State has argued that that is a way of distinguishing Crump. However, I would submit to the Court that the testimony here was even more prejudicial. For one thing, it was not just a question and answer, as it was in Crump. The prosecutor here repeatedly elicited testimony regarding Derota's current belief and past belief in the defendant's guilt. But she consistently testified that her current belief is her husband didn't do it, right? Every time she's asked, what do you currently believe? Oh, I don't believe he did it at all. That's correct. She says that three or four times. But I do think that the goal, the prosecutor's goal, perhaps the prosecutor didn't know how she would answer those questions, but knowing that she had testified inconsistently with that at a prior occasion. Well, they already charged her. Right. So I think they have a clue. Right. So they obviously, the plan here was to get into evidence regarding her belief in the defendant's guilt. And the question has to be asked, is that relevant? Is it admissible? And what the prosecution argued here was that it was admissible to show her bias. But if she says she had a belief, that doesn't necessarily, it may be that she's questioning her own recollection, but it's not an opinion. I don't, I would disagree, I would respectfully disagree with that. I don't know what the distinction is between a belief and an opinion. And in the Crump case, it's, the wording, the phrasing of the prosecutor's question was, I have, you had cause to believe that the defendant had committed the offense. That was the language that was held to be reversible error in Crump. Mr. Kern? Yes. What's the standard review here? Is this going to be an abuse of discretion? It is an abuse of discretion, Your Honor. But I have, and you'll have to forgive me because I will have to read the Hansen case. I don't recall seeing that case in the state's brief. It's not. But you really do need to read it because it's, I would think, speaking just for myself, it's very much on point where another family member, one family member kills his whole family, leaving one alive, and that sister testifies against him, and she's testified. From the beginning, she thought it was her brother, the defendant, and that explained why the police were correct in looking for him and chasing him down, which is, I'd suggest, strongly analogous to here, where the question is why are the police calling Mr. Schippa and why is it significant that Mr. Schippa is not returning their calls, which is really not raised as one of the positions. It's in neither brief. Okay. Possibly we could give you leave to further brief that out. I do have a recollection of having read that case. Obviously, I didn't read it in preparation for today. It's a pretty big case. I don't resent your flat-footed here, and if you want to, I think we can agree on some additional time. But what I would say, Your Honor, is the proper justification for the admissibility of this testimony in this case was to show evidence of bias on the part of the witness, and my argument is that this kind of belief or opinion testimony is far too ambiguous to admit as bearing on a witness's bias or motive to testify falsely. For example, if you were to tell me, though, that a witness thinks that a defendant is guilty without knowing anything else about the case, my assumption would be that that witness, if anything, would be inclined to favor or shade their testimony in favor of the prosecution, the idea being I don't want to render aid to someone I believe is guilty of the offense. Here, the prosecutor argued the exact opposite, that DeRoda's belief in the defendant's guilt somehow showed her bias to testify in favor of the defense. The problem with that- It always happens so. I mean, that's what this case is. Neither brief cites the instruction, which in this case was the 311, which is the impeaching instruction, which in turn is based on 115.10, of prior inconsistent statements, and they were instructed on this, with no objection by Mr. Byrne, the trial attorney. You've got time. We're asking questions. We don't hold back. Sure. So that's why we look at those cases and say, Frankie, any inconsistent statement will almost always come in, and if the prior inconsistent statement was made under oath, that will come in as substantive evidence, almost always. I mean, it's very rare for a court review to say otherwise. So why should we say in this case it shouldn't have come in? Because it's a witness who has not established that she has personal knowledge of facts directly surrounding the murder. In other words, she did not testify that I witnessed the murder, yet she's allowed to offer her opinion that the defendant committed the offense. But, again, she's said three times, I don't believe she did do it. So that's her current belief is, no, no, he's innocent, and my poor husband didn't do this. Correct. But the prosecutor then, of course, used her prior inconsistent statement to impeach her. And I think the issue here is if this testimony is improper in the first instance, then her belief now, her belief in the past, it's irrelevant. It can't come in either way. So, obviously, the prosecution cannot ask a question that's irrelevant or collateral and then impeach that witness as to that issue if they don't get the answer that they want. And that's precisely what happened here. I agree, but also would you agree that nobody briefed that either? That's actually black-letter law. I can't fool the witness by tricking him into saying a lie for the mere purpose of burying him with a prior statement that helps me. But, again, I don't see that in either of the briefs either. Well, Your Honor, we did make a point in our brief that a witness is or, excuse me, a party is limited to the extent it can cross-examine its own witness. So if the prosecution calls a witness and it gives an answer it doesn't like, it cannot necessarily impeach that witness with a prior inconsistent statement. It can only do so if the testimony does affirmative damage to their case. You do argue that. That's correct. So does it do it here? Does the fact that she now says that my husband is innocent of this charge, does that harm her case? Does that harm the state's case? No, I don't believe it does, Your Honor. The first argument that I would make is that this testimony is completely irrelevant both as to her current belief and her past belief, regardless of whether she testifies at trial that I don't believe that he's guilty or she says that I do think he's guilty. So I don't think that this testimony, that this question should have been allowed in the first place. But being that it is a collateral matter, the prosecution can't ask that question with the purpose of impeaching her if they don't give her the answer that they want. Because, again, this is extremely prejudicial testimony. Here's what I would say. As a juror sitting there, if I hear that the defendant's own wife believes that he's guilty, why on earth wouldn't I think he's guilty? And at the same time, it would invite me to speculate as to what it is she knows that she didn't testify to that forms the basis for that belief. Taking your first sentence is true. And that I don't take the second sentence is true as well. So when the jurors hear from her, oh, I don't think my husband did this horrible, strangled my mother to death with her silk sweater. And that would sway you, or at least you as a jury would give a lot of, you'd think that was pretty good. And then how could they not come in and say, and by the way, one reason we're here is back in 2007. And again in 2010 you said you did think he did. Well, I don't think it's accurate to say that that's one of the reasons they were there. I mean, the defendant was indicted prior to her perjury and obstruction of justice convictions. So that was not part and parcel of the investigation into whether or not he perpetrated this murder. The other thing I would say here, though, is we have to look at how the prosecution actually used this evidence. And they used it, even though they said it was admissible to show evidence of bias, motive to testify falsely, they used it as substantive evidence of guilt. But they were instructed, and Mr. Byrne, the trial attorney, agreed it could be used as substantive evidence. He didn't object at all to 311 being given. And so when they were instructed under IPI 311, which is you may consider evidence to, as substantive evidence under certain circumstances, and I didn't have it here, he didn't object. And so that's how they were instructed, and both sides wiled it. I think the difficulty that, and I did consider raising an ineffective assistance of counsel claim. The problem, though, with that is I cannot fault counsel for not drawing more attention to evidence that he thought was unfairly prejudicial to which he had already objected. And one of the very last things that the prosecutor argued in this case is, DeRoto was asked, do you believe that man killed your mother in her home? She didn't want to say yes today. Back in 2010, she said yes. She believes it because she knows it, too. So in other words, you can, jury, you can believe that the defendant perpetrated this murder because his own wife believes that he did it. And if she believes that he did it, she must know that he did it, somehow, someway. That was how the evidence was used, and that was highly, it's highly improper to do that. We'll come back specifically to the transcript of that, the August 23rd. It was the 89th. Question, ASA. Well, on August 23rd of 2010, when you were under oath, did you believe your husband killed your mother then? Answer, yes, because I was confused, because what the detectives were pressuring me is, I sent all this pressure that was building up to me, yes, I did believe he did it. And then you were under oath, yes, you were interviewed, yes. So she blames the detectives. I was pressured by the detectives to say that. And that's in her response. You said this in August. I did. The police were pressuring me. But the only reason this issue is in the case at all is because the prosecution injected it into the case. And I think, you know, it's, we can't have a system where we have witnesses getting on the stand and saying, well, I think that the defendant's guilty, or I think that he's innocent. That's not how we do this. I mean, for as long as, you know, the case law goes back, it says that a lay witness can only testify to those facts of which they have personal knowledge. I agree with you, sir. But the real question is, is this truly an opinion, an expression of an opinion? I don't understand how it's not. Because she testified, I believed in 2007 he was guilty. I don't know how that's not an opinion. It's certainly not a statement of fact. It's a statement of her belief at that time. So I guess I don't quite understand the distinction between if that's not an opinion, well, what is an opinion? She later testified that she was with the defendant at the time frame that the state alleged the murder took place and that they were together, they had left the condominium that was her mother's and had gone to a hotel. So that's not an opinion. That's an absolute statement. Right. And I agree with Your Honor. Those statements, of course, can come in. And instances in which she has been inconsistent with that testimony on a prior occasion will certainly come in. Those are the kinds of things that go to undermine a witness's credibility. Things like her relationship with the defendant. Evidence of bias is just evidence that a witness has something to gain or lose by their testimony. So the classic example of that is, well, if I'm married to the defendant, I obviously have something to gain or lose because if he's convicted, he's going to prison. And I know I've taken out quite a bit of time. I'd like you to have at least five minutes for rebuttal. Okay. So would you conclude? Yes, Your Honor. Thank you. So just very briefly, this was not a minor error. It wasn't a trivial error, in my opinion. It was substantial. And it most certainly contributed to the conviction. Thank you, sir. I think you'll have five minutes on rebuttal. Thank you. Good morning. Janet Mahoney on behalf of the people of the State of Illinois. The August 23, 2010 testimony was her testimony from her perjury trial. So she took a bench trial? I'm sorry. She did take a bench trial. There's a Rule 23 order on it. I don't know if this Court has the authority to take judicial notice of a Rule 23 order, but there is a Rule 23 order on it. perjury and obstruction of justice trial. When did this happen? The crime? Yes. 2007. June 15, 2007. Based on what? Based on the fact that she uncharacteristically left work at 3.30 on Friday afternoon, that she was supposed to contact a co-worker later that night about plans for the following day and never did. When that co-worker called her, she didn't answer the phone or return a message. On the next day, she didn't show up for the planned activity, nor did she answer a call or return a message. So the last time she was ever seen or heard of was on June 15, 2007, at the same time that the defendant and his wife were in the condominium. But out of this, she got immunity. So that was the deal that was struck between the State and the daughter. Correct. And so this issue in this very, very close case, what did she give you a full statement as to what actually occurred as a result of this after getting immunity? Every time this witness opened her mouth, she lied. And there were little nuggets of truth in there that had been corroborated by other things. She spoke to the police on the day the body was found. She lied. She spoke to the State's attorney. She lied. She spoke to the grand jury. She lied. She testified at her perjury trial. She lied. She gets on the stand in this case, and right out of the box, she lies. And as soon as she lies, the State gets into her prior statement, inconsistent statement under oath from her perjury trial, and goes into the basis of the reason for her lies at the time she said them. Well, why did you lie at this time? At that time, I didn't believe my husband killed my mother, so I said this. Well, why did you lie at this time? And to the extent that she presented her current belief, that was unsolicited. And that actually was to the defendant's benefit. Her current belief was opinion testimony. That wasn't the target of this examination. The target of the examination was, what did you believe when you said this? What did you believe when you said this? Her state of mind, her motive, interest, and bias, to which the jury is entitled to know what she's thinking when she's giving these various statements so that they can weigh them and decide, well, is it this one that's true?  Or is it this one that's true? Well, how much of this is in a case as close as this when it comes to the facts? It's a very circumstantial case. Even the DNA evidence, it said there was male DNA, female DNA, but it didn't match directly to the victim. The male DNA under her fingernails belongs to the defendant. And between the last time she saw the defendant and the time that she was killed, she was meticulously washing her hands because she was a surgical assistant and assisted in seven surgeries. And she had been so good at washing her hands that there was less of her DNA underneath her fingernails than there was of the defendant's under her fingernails. But that, of course, then made it more difficult for the forensic expert to determine that it was actually him. No, they determined it was him. It wasn't an eight-point DNA. The conclusion was that it was within a certain parameter, a certain number of people in the population. It was his DNA. But by millions, not by... It wasn't directly an eight-point DNA type that connected him to the forensics. It's the State's position that it was a direct match to the defendant. They didn't argue that it was not, right? Correct. The argument below by the defense was, well, he touched her. If so, what? Right. She touched him, rather. Right. Was there a deal on sentencing before she got immunity? Or how did that work out? There's nothing in the record on that. I don't know. I know that... What was she sentenced to? I think it was three years. Or maybe it was probation. I don't know off the top of my head what it was because, to be quite honest, it is odd. Frankly, you more than the defendant because, again, you say there's Rule 23, so we affirmed it, her conviction. Right at the first sentence, we always put in, by the way, what did the defendant get? And whether she's testifying coming out of the lockup or not is always something of just interesting. Correct. Correct. The case does turn on her motive. Her testimony, like most witnesses' testimony, turns entirely on her motive. And if she's coming in out of the lockup in the hope of incurring a favor, normally that would be held for her. But if there's no hope of that, and it's often not, then we don't hold that. But normally it would come up. I believe it was probation. Again, that's not in this record. But then she would be on probation at the time she testified this time. Correct. But she's a liar. Everything is a lie. And she has certain nuggets of truth in hers that are corroborated by other people they needed to get from her. And it helped establish the motive that her mother and the defendant did not get along, the mother was unhappy about the marriage. It also established that they were in the condominium at 3.30 in the afternoon on the phone. Yes, we had another witness, but it sort of drove home the point. We were in the condominium on the day at the time that the mother suddenly left work that she was complaining about her mother on the phone. She admitted she was complaining about her mother on the phone. She did have certain aspects that were important to this case. Do you think she was an aider and abetter? From what I can see, she was there for the entire thing. The insurance? She was going to gain financially from her mother's murder. Remember, she moved right into that condominium where this Mr. Stranger Danger came in and brutally murdered her mother. And within days, she and her new husband moved right back into that condominium. That's a little odd. So she definitely had an interest in this case herself. She had an interest to lie. Her motive and her interest to give defendant an alibi to lie about their whereabouts, whether she believed he killed her and didn't believe she killed her, drove the various lies that she was giving to the various people. And these were not opinions. These were state of mind, motive, interest, and bias. And the closing argument actually drives home the fact that this was state of mind because the state argued that she believes it because she knows it. Knowing is not opinion. Well, please, to say I know it, I put on thousands of people to say, do you know he did it? I know he did it. If we were so foolish as to allow such a thing to occur. Well, they were arguing inferentially that she knows it because she was there. Because she was there. Well, she was concerned. Her mother was definitely concerned over her marriage when they went to Las Vegas to get married. So is one of the questions whether or not it was really Siobhan or that maybe it was somebody else that could have been with her or done this murder? No, his DNA is under her fingernails. He's there. His DNA is under the fingernails. All right. Okay. As for Crump, again, that was a police officer who testified during the course of his investigation. I believe the defendant did it. Here it's not I believe. It's I believed when I said this that defendant did it. And then I believed when I said this that the defendant didn't do it. It was tied to her lies and not to a belief that defendant actually was, in fact, the offender. The Hansen case, yes, it does use the word believe. And in some respects is also very helpful. That, though, drove the investigation in this case. The belief in this case is driving the lies, driving the perjury. And the jury is entitled to know when they're considering these various statements as to whether they're lies or not lies, what was her motivation when she stated that. And because of that, that is state of mind, not opinion. But you don't cite the Hansen case, do you? No, I don't. Okay. The vehicle for the introduction of these prior inconsistent statements, as you correctly noted, wasn't just impeachment. It was 115-10.1 because it was prior testimony, inconsistent testimony under oath. So, yes, in addition to being impeachment, which it was impeaching, it was also could be introduced under that. Unless there are any other questions, it's the State's position that this was state of mind evidence, not opinion testimony, and we ask that you affirm the conviction and sentence. Thank you. Rebuttal. I don't mean to harp on this. I think sometimes when you do these appeals, you develop a little bit of tunnel vision. But the one thing that I'm not hearing is a reasonable explanation for how her belief provides her motive to testify one way or the other. Her relationship with the defendant, yes. If she had a financial motive to testify a certain way, yes. If she had a poor relationship with her mother, yes. To the extent she gave prior inconsistent statements on things that are not overly prejudicial and otherwise admissible into evidence, yes. Those are all things that can go to her credibility. But just her opinion that I believe that the defendant's guilty, there's not a sufficient nexus there with her motive to testify falsely that this testimony, which is extremely prejudicial to the defendant, should be admitted. And, you know, one thing I do want to address that the State argued, which is that this testimony regarding her belief or her current belief was unsolicited. The prosecution asked the questions, do you believe that he killed your mother? I mean, it was not unsolicited. This was the prosecutor's line of examination. So clearly it's the prosecutor who injected this issue into the trial. And, again, you know, with regard to this being testimony at a prior proceeding, I agree that if it's otherwise admissible, then it can be admitted substantively. But that doesn't answer the threshold question, which is whether this testimony, the subject matter of this testimony, her belief, should be admitted in the first place. Because if not, then the fact that there's prior testimony as to that issue doesn't make a difference. And the State had attempted to make some distinction between this case and the one in which that was used in Crump. The exact question that was asked in Crump was, through the course of your investigation, officer, did you have reason to believe that the defendant, in this case, committed this offense? Yes, I did. So it's the exact same word, what is your belief? And DeRota repeatedly was asked to testify as to her beliefs, both present and, I suppose, back in 2007. Thank you. Justice Harris had mentioned right during your opening about the familiarity with Hansen, which was not cited by the party. If I may, if you wish to address that in a written supplemental brief within 10 days from today's date, Hansen can be found at 238 Illinois 2nd, page 74. The head notes 13 to 19, those are just my bets. You do whatever you want with it. And then State, should Mr. Curran file one, you'd have it 10 days after that. And if it's not filed on time, we're going to come out with the opinion anyway. So please have that on time. Anything else? Not for me. Well, given abuse of discretion standard, and this, as the State referred to, were liars, testimonies, it was concluded, she concluded before the jury, did he kill her? And she says, no, I don't believe he did. Where's the prejudice? The prejudice comes in because prior to that, she had testified in 2007, she did believe that the defendant. Yeah, but as the day of his trial, her belief was, no, he did not do it. The jury was informed of that. They could consider it. They did, they must have considered it. Right. If I understand Your Honor's question correctly, her, whether it's her current or past belief, I think is irrelevant to prejudice. The fact that at one time she believed that the defendant did it, I think is sufficient to prejudice the defendant in the minds of the jury, or in the mind of the jury, excuse me. Thank you, sir. Thank you very much. Since we're getting supplemental information from the state, in looking at the state's brief, it discusses the testing that we talked about. Maybe you can supply some more information on this. It says, Neff, who was a forensic analyst, this is page 12 of the brief, Neff tested the right fingernail clippings and found a mixture of DNA profiles, a major profile and a minor. Neff identified the defendant's DNA profile in the major profile. Neff identified a partial female profile in the minor profile, from which Irina could not be excluded. Neff stated that she would expect Irina's DNA to be under her fingernails, but her profile was less than the major profile, which matched the defendant. The major profile meant there was a higher level of that material, and this indicated close personal contact of some sort to account for the cellular transfer of DNA, and it was possible it occurred during a struggle, but also possible through nonviolent contact. Neff stated that defendant's major human DNA profile identified on the black, one in 2.1 quadrillion white, or one in 12 quadrillion Hispanic unrelated individuals. The world population was about six and one-half quadrillion people. It is six and a half billion, though, right? I mean, I agree, Justice Urean. Thank God we don't have six and a half quadrillion people yet. Well, if you check that page 12, and then you can tell us because you definitively said that this was a direct match to the victim. So if you could supply some additional information, if you wish, since you have the time, we'll consider that. Okay. Leave this granted 10 days further to litigants to further brief those issues that we've just presented. I should include the DNA part in my response to his, or should I do, are we doing crossing? No, both simultaneously provide within 10 days. The court is taking the matter under advisement.